Phillip ISSEN, on behalf of himself and all others similarly situated, and Derivatively on behalf of GSC Enterprises, Inc., Plaintiffs,

v.

GSC ENTERPRISES, INC., et al., Defendants.

Seymour ABRAMS, individually and on behalf of himself and all other persons similarly situated, and Derivatively on behalf of GSC Enterprises, Inc. and the shareholders thereof, Plaintiffs,

v.

GSC ENTERPRISES, INC., a corporation, et al., Defendants.

Nos. 74 C 0346, 74 C 2215.

United States District Court, N. D. Illinois, E. D.

Aug. 28, 1981.

Pressman & Hartunian, Chicago, Ill., for Issen.

John T. Coleman, Norman J. Barry, Baker & McKenzie, Edward A. Gorenstein, Lieb, Pedian, Eiden and Gorenstein, Jerome H. Torshen, Torshen, Fortes & Eiger, William N. Weaver, Jr., Jack L. Block, Sachnoff, Schrager, Jones & Weaver, Hubachek, Kelly, Rauch & Kirby, Charles Pressman, Pressman & Hartunian, Peterson, Ross, Rall, Barber & Seidel, Stephen M. Merrick, Fishman, Merrick & Perlman, Chicago, Ill., for defendants.

Harry A. Young, Jr., Neistein, Richman, Hauslinger & Young, Ltd., Chicago, Ill., for Abrams.

Richard Goodman, pro se.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

The latest skirmish in this battle[1] between plaintiffs Phillip Issen ("Issen"), in No. 74 C 0346, Seymour Abrams ("Abrams"), in No. 74 C 2215, and a host of corporate and individual defendants related to GSC Enterprises, Inc. ("GSC") and its wholly-owned subsidiaries, The Bank of Lincolnwood ("the Bank"), Steinway Drug Company and Ford Hopkins Drug Company, involves plaintiffs' renewed motion for class certification of certain of their pre-merger[2] claims and defendants' motion to dismiss or, in the alternative, for summary

judgment with respect to those claims as raised in Abrams' amended complaint.[3] In addition, Issen has moved to amend his amended complaint by adding Miller, Cooper and Company, certified public accountants, as an additional party defendant in No. 74 C 0346 so as to align that case with No. 74 C 2215, and Abrams has moved to amend his amended complaint by adding allegations of scienter and that he purchased GSC stock as a result of the nondisclosures alleged so as to properly make out a claim for securities fraud after *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976), and *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975), both decided after this case was filed in 1974.

For the reasons set forth more fully below, defendants' motion for summary judgment will be granted in part and denied in part, and a narrow class of purchasers of GSC stock will be certified with Abrams as class representative. Abrams' motion to amend his amended complaint will be allowed and Issen's motion to amend will be deferred pending Issen's reporting to the Court as to his willingness to join in the class represented by Abrams as suggested in Part IV of this opinion. We will turn to a comprehensive discussion of the motions currently pending before the Court following a brief review of the issues involved in the pre-merger aspect of these cases.

1. The parties to these consolidated cases have appeared before four federal district court judges during the seven-year period of this protracted litigation, and they do not seem to be any closer to resolving their differences today than they were when the battle lines were first drawn. The *Issen* case was filed on February 4, 1974, and assigned to Judge Tone. The *Abrams* case followed as related thereafter and both were subsequently reassigned to Judge Austin on September 13, 1974. The cases were reassigned to Judge Flaum on January 20, 1975, and reassigned again to this Court on October 19, 1979.

2. The pre-merger aspects of this case involve alleged nondisclosures of material information in connection with the purchase and sale of GSC stock between 1969 and 1974 in violation of sections 10(b) and 14(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b) and

78n(a) (1970), and the rules promulgated thereunder by the Securities and Exchange Commission. The post-merger aspects of this case involve Abrams' challenge to a going private merger accomplished by GSC in October, 1977, under both federal securities and Delaware law. A detailed history of both aspects of this case may be found in our earlier opinions in *Issen v. GSC Enterprises, Inc.*, 508 F.Supp. 1278 and 1298 (N.D.Ill.1981) (two opinions).

3. Plaintiffs' first motion for class certification of the claims asserted in the premerger portion of this case was denied in *Issen v. GSC Enterprises, Inc., supra*, 508 F.Supp. at 1298. Defendants' earlier motions to dismiss pursuant to Fed.R.Civ.P. 8(a) and 9(b) were denied by Judge Flaum on March 31, 1975, and a subsequent motion to dismiss was denied by Judge Flaum on September 23, 1976, both in unpublished orders.

## I.

The pre-merger portion of these consolidated cases involves, in the first instance, plaintiffs' allegations that the defendants failed to disclose the details of various loans made to certain officers and/or directors of the Bank and GSC, or to entities affiliated with those persons, in GSC's annual reports, proxy statements and SEC filings from roughly the beginning of 1969 through early 1974 in violation of sections 10(b) and 14(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b), 78n(a). Both Issen and Abrams assert that they purchased shares of GSC stock during this period[4] in reliance upon documents from which the disclosure of the loan detail was omitted. They maintain that information such as the amount of each individual loan, the collateral securing the loan, the interest charged, and the solvency of the borrower would have been material to the decisionmaking process of reasonable investors like themselves interested in purchasing GSC stock. Many of the loans were repaid in full, but some were not and the Bank suffered a loss thereby. Although plaintiffs' amended complaints contain other allegations of nondisclosures of assertedly material information during this period,[5] the plaintiffs have not sought class certification with respect to these additional claims and the defendants have not addressed themselves to these claims in their motion to dismiss or for summary judgment on the stated assumption that plaintiffs have abandoned these claims. Plaintiffs, however, deny that they have abandoned any of their claims by moving for class certification of the claim involving the nondisclosure of the loan detail or limiting their response to defendants' motion to the issues raised therein.

Accordingly, while the Court's discussion in the remainder of this opinion will be limited to the alleged nondisclosure of sufficient loan detail for purposes of the pending motions, such limitation should not be taken to mean by implication that plaintiffs have abandoned their allegations of additional nondisclosures in violation of the securities laws. The Court will address those claims when they are properly before us.

## II.

■ Abrams' motion to amend his amended complaint by adding allegations that defendants acted with scienter and that there is a nexus between defendants' acts and his purchase of GSC stock must be considered at the outset since the amended complaint would admittedly be fatally defective without such allegations after the Supreme Court's rulings in *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976), and *Blue Chip Stamps v. Manor Drug Stores, Inc.*, 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975). Under Rule 15(a) of the Federal Rules of Civil Procedure, once a defendant has answered, the plaintiff may amend the complaint "only by leave of the court or by written consent of the adverse party." Rule 15(a) directs that leave to amend be granted liberally. *Foman v. Davis*, 371 U.S. 178, 181,

---

4. Issen purchased 150 shares of stock in GSC Enterprises, Inc., on May 19, 1969, at $10.00 per share. Abrams purchased his GSC stock as follows:

| Date | Amount | Price |
|------|--------|-------|
| 02/05/70 | 200 shares | $3¾ |
| 02/05/70 | 300 shares | 3⅞ |
| 03/30/70 | 300 shares | 3¾ |
| 04/10/70 | 200 shares | 3½ |

5. Plaintiffs' amended complaints include allegations that the defendants failed to disclose the true financial condition of Steinway Drug Co. and Ford Hopkins Drug Co., both GSC subsidiaries, in annual reports, proxy statements, and SEC filings during this period and also failed to disclose that the drug company subsidiaries were sold at less than fair market value sometime in 1973. The defendants also allegedly failed to disclose the payment of inflated insurance premiums to an insurance agency controlled by one of the defendants between 1972 and 1973, failed to disclose inflated rental payments to a company partially controlled by one of the defendants from 1969 to 1973, and failed to disclose other questionable payments during that same rough time period. These alleged nondisclosures continuing in varying degrees over an extended period of time are alleged to be part of a common scheme or course of conduct by which defendants supposedly conspired to defraud investors in GSC and benefit themselves.

83 S.Ct. 227, 229, 9 L.Ed.2d 222 (1962); *Stern v. United States Gypsum, Inc.*, 547 F.2d 1329, 1334 (7th Cir.), *cert. denied*, 434 U.S. 975, 98 S.Ct. 533, 54 L.Ed.2d 467 (1977). Such leave, however, is inappropriate where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, futility of amendment, etc." *Foman*, 371 U.S. at 192, 83 S.Ct. at 230; *Mertens v. Hummell*, 587 F.2d 862, 865 (7th Cir. 1978); *Conroy Datsun Ltd. v. Nissan Motor Corporation in U. S. A.*, 506 F.Supp. 1051, 1053 (N.D.Ill.1980). The determination as to whether leave to amend should be granted is committed to the discretion of the trial court. *Zenith Radio Corporation v. Hazeltine Research, Inc.*, 401 U.S. 321, 330, 91 S.Ct. 795, 802, 28 L.Ed.2d 77 (1971). *Mertens, id.*

▪ Undue prejudice has been found in cases where the amendment "brings entirely new and separate claims, adds new parties, or at least entails more than an alternative claim or a change in the allegations of the complaint" and where the amendment would require expensive and time-consuming new discovery. *A. Cherney Disposal Co. v. Chicago & Suburban Refuse Disposal Corp.*, 68 F.R.D. 383, 385 (N.D.Ill. 1975). In such instances, a motion for leave to amend should be denied because the prejudice to the defendant outweighs plaintiff's right to have the case tried on its merits. *Conroy Datsun Ltd. v. Nissan Motors Corporation in U. S. A., supra*, 506 F.Supp. 1054; *Hess v. Gray*, 85 F.R.D. 15, 20 (N.D. Ill.1979). Undue delay has been found to bar an amendment in extreme cases, such as when the proposed amendment changed the plaintiff's theory of the case over three years after the case began and after the Supreme Court affirmed the trial court's dismissal. *Doe v. McMillan*, 566 F.2d 713, 720 (D.C.Cir.1977) (*but see* Judge Leventhal's dissent on this issue, 566 F.2d at 721). Ordinarily, however, mere delay in seeking to amend a complaint will not bar the amendment absent a showing of undue prejudice resulting from the delay.

▪ In the case at bar, certain defendants strenuously oppose Abrams' motion to amend on the ground that they will be unduly prejudiced by an amendment that comes over seven years after the original complaint was filed. But the defendants have failed to establish that they would be unduly prejudiced by this amendment which, though it is chronologically late in the litigation, comes before the close of discovery, before trial, and before rulings on the pending motions to dismiss or for summary judgment and for class certification. The amendment does not contain an entirely new claim or theory nor should it entail a substantial amount of additional discovery, if indeed it generates any additional discovery at all. The primary reason for the amendment is to take account of developments in federal securities law since this case was originally docketed and to formally plead issues that the parties have implicitly acknowledged to be part of this case for some time. To the extent that the defendants believe that Abrams will be unable to muster factual support for his amended complaint, their concerns are more appropriately addressed in the context of a motion to dismiss or for summary judgment. Moreover, it should be noted that although Abrams' amended complaint has been technically deficient since the Supreme Court's decisions in *Ernst & Ernst v. Hochfelder* and *Blue Chip Stamps v. Manor Drug Stores, Inc.*, the defendants have not moved to dismiss the complaint on this ground until now.

It is also clear that the plaintiffs are not entirely to blame for the delays that have plagued these cases from their inception. As noted earlier,[6] these cases have thus far been before four federal judges. Virtually all of the defendants have changed counsel at one point or another. The motion practice on both sides has generated a substantial amount of paper along with attendant delay in ruling on motions to quash, dismiss,

---

**6.** *See* notes 1 and 3, *supra.*

certify a class, or for temporary restraining orders and preliminary injunctions. Hopefully, the case is now proceeding apace and allowance of Abrams' motion to amend will further facilitate resolution on the merits.

### III.

The parties have simultaneously briefed plaintiffs' motion for class certification of the pre-merger claims and defendants' motion to dismiss or, in the alternative, for summary judgment without any indication as to which of these motions they wish the Court to address first. Although the United States Court of Appeals for the Seventh Circuit has interpreted the requirement in Fed.R.Civ.P. 23(c)(1) that class certification be determined "[a]s soon as practicable after the commencement of an action" to imply that certification of a Rule 23(b)(3) class should generally precede any ruling on the merits, *Jimenez v. Weinberger*, 523 F.2d 689, 697 (7th Cir. 1975), *cert. denied*, 427 U.S. 912, 96 S.Ct. 3200, 49 L.Ed.2d 1204 (1976); *Peritz v. Liberty Loan Corp.*, 523 F.2d 349, 353 (7th Cir. 1975), the "as soon as practicable" requirement begins to lose much of its meaning in cases such as these in which there have been a number of rulings on earlier motions to dismiss, to stay, for temporary and permanent injunctive relief, and a prior denial of class certification during the course of more than seven years of litigation at the district court level.

The principal concern of both the Seventh Circuit and the Supreme Court[7] in requiring early determination of the class certification question is the need to avoid so-called "one-way intervention" whereby absent potential class members might await the outcome of a decision on the merits before deciding whether or not to join the class and be bound by the class judgment. In the case at bar, however, the defendants have filed a number of motions to dismiss various aspects of these cases prior to class certification seemingly without any concern for the one-way intervention problem.[8] Moreover, our ruling on the pending motion to dismiss or, in the alternative, for summary judgment does not completely resolve the merits of the instant controversy. It merely directs the parties' attentions to those claims that are legally cognizable under the federal securities laws and the extent of those claims. In such circumstances, resolution of the motion simultaneously with a determination of the class certification question will enable the Court to define the proper scope of an action that has been pending for an inordinate amount of time and will not do injury to the concerns underlying the "as soon as practicable" requirement. *See, e. g., Garcia v. Rush-Presbyterian—St. Lukes Medical Center*, 80 F.R.D. 254, 260 (N.D.Ill.1978) (ruling on defendant's motion for partial summary judgment appropriate prior to class certification in order to properly define scope of action).

Defendants attack the sufficiency of Abrams' claims under both section 10(b) and section 14(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b), 78n(a). They contend that Abrams' section 14(a) claim is deficient because it does not allege an infringement of his corporate suffrage rights as a result of the failure to disclose the loan detail in GSC proxy statements or transaction causation between

---

7. *See American Pipe and Construction Co. v. Utah*, 414 U.S. 538, 547, 94 S.Ct. 756, 763, 38 L.Ed.2d 713 (1973).

8. Some courts have held that a defendant may either expressly or impliedly waive the protection against one-way intervention afforded by Fed.R.Civ.P. 23(c) by seeking a ruling on the merits prior to class certification. *See, e. g., Katz v. Carte Blanche Corp.*, 496 F.2d 747 (3d Cir. 1974), *cert. denied*, 419 U.S. 885, 95 S.Ct. 152, 42 L.Ed.2d 125 (1975); *Haas v. Pittsburgh National Bank*, 381 F.Supp. 801 (W.D.Pa.1974), *rev'd on other grounds*, 526 F.2d 1083 (3d Cir. 1975). *Cf. Peritz v. Liberty Loan Corporation*, 523 F.2d 349, 354 n.4 (7th Cir. 1975) (noting, without deciding, that other circuits have held that a defendant may waive the one-way intervention protection of Rule 23(c) by moving for summary judgment before class certification). In the post-merger aspect of this case, the Court, without objection, ruled on the pending motion to dismiss or, in the alternative, for summary judgment simultaneously with the denial of class certification. *See Issen v. GSC Enterprises, Inc.*, 508 F.Supp. 1278 (N.D.Ill. 1981).

GSC's proxy solicitation for election of directors and the loans to GSC officers and directors, the details of which were not disclosed. Defendants also maintain that Abrams cannot state a claim for relief under section 10(b) or Rule 10b–5 based upon omissions in GSC form 10–Ks since the exclusive remedy for misrepresentations or omissions in SEC filings is section 18(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78r(a). Defendants contend that Abrams' section 10(b) claim is deficient because it does not allege, nor can Abrams prove (1) a duty to disclose the loan detail, (2) a connection between Abrams' purchase of GSC stock and the nondisclosure of the loan detail, (3) scienter, (4) reliance, (5) loss causation, or (6) damages.

■ In *Mills v. Electric Auto-Lite Company*, 396 U.S. 375, 381, 90 S.Ct. 616, 620, 24 L.Ed.2d 593 (1970), the Supreme Court stated, citing the appropriate legislative history, that section 14(a) of the Securities Exchange Act "was intended to promote 'the free exercise of the voting rights of stockholders' by ensuring that proxies would be solicited with 'explanation to the stockholder of the real nature of the questions for which authority to cast his vote is sought.'" Since *Mills*, lower courts have reiterated the principle that in order to state a claim for relief under section 14(a), "plaintiffs must allege an injury to their corporate suffrage rights or an injury stemming from a corporate transaction whose approval was obtained by a misleading proxy statement." *Wachovia Bank & Trust Co. v. National Student Marketing Corp.*, 461 F.Supp. 999, 1007 (D.D.C.1978), *reversed on other grounds*, 650 F.2d 342 (D.C.Cir.1980); *In re Penn Central Securities Litigation*, 347 F.Supp. 1327, 1342 (E.D.Pa.1972), *affirmed*, 494 F.2d 528 (3d Cir. 1974). *See also Hoover v. Allen*, 241 F.Supp. 213, 230 (S.D.N.Y.1965). In order to establish a sufficient causal relationship between the asserted violation of section 14(a) and the injury for which the plaintiff seeks redress, he must show that "the proxy solicitation itself, rather than the particular defect in the solicitation materials, was an essential link in the accomplishment of the transaction." *Mills v.*

*Electric Auto-Lite Company, supra*, 396 U.S. at 385, 90 S.Ct. at 622; *Schlick v. Penn-Dixie Cement Corporation*, 507 F.2d 374, 381–82 (2d Cir. 1974).

■ In the case at bar, Abrams has not alleged any injury to his corporate suffrage rights nor has he alleged any transaction causation between the 1969 or 1970 GSC proxy solicitations and the loans to GSC officers and directors, the source of his purported injury. Since the election of GSC directors accomplished by the assertedly deficient proxies was not causally related to the loans to certain directors, Count II of the amended complaints fail to state a claim upon which relief may be granted under section 14(a). *See Kamerman v. Pakco Companies, Inc.*, CCH Fed.Sec.L.Rep. [1978 Transfer Binder] ¶ 96,318 at 93,065 (S.D.N.Y.1978).

■ Abrams has virtually conceded the inadequacy of his section 14(a) claim in his two memoranda filed in opposition to defendants' motion to dismiss, claiming instead that the failure to disclose the loan detail in GSC proxy material states a claim for relief under section 10(b) and Rule 10b–5. It is clear that a section 10(b) claim may be based upon misrepresentations or omissions occurring in proxy material regardless of whether a claim is also stated under section 14(a) so long as the requisite elements of liability under section 10(b) are otherwise established. *See, e. g., Securities & Exchange Commission v. National Securities*, 393 U.S. 453, 468, 89 S.Ct. 564, 573, 21 L.Ed.2d 668 (1969); *Rodman v. Grant Foundation*, 608 F.2d 64, 70–72 (2d Cir. 1979); *McDonough v. Champburger Corporation*, 488 F.2d 948, 951 (5th Cir. 1974); *Swanson v. American Consumers Industries, Inc.*, 475 F.2d 516 (7th Cir. 1973). In the case at bar, however, defendants argue that because the proxy statements from which the loan detail was omitted solicited proxies with respect to the election of GSC directors and other corporate actions unrelated to the purchase or sale of GSC stock, the omissions did not occur "in connection with" the purchase or sale of securities within the mean-

ing of section 10(b) or Rule 10b–5. *Superintendent of Insurance v. Bankers Life & Casualty Co.*, 404 U.S. 6, 92 S.Ct. 165, 30 L.Ed.2d 128 (1971).

Defendants' suggested interpretation of the in connection with requirement would, in the circumstances presented in the instant case, unduly restrict the remedial purposes of section 10(b). The instant case is distinguishable from others, such as *St. Louis Union Trust Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 562 F.2d 1040 (8th Cir. 1977), and *Ketchum v. Green*, 557 F.2d 1022 (3d Cir. 1977), *cert. denied*, 434 U.S. 940, 98 S.Ct. 431, 54 L.Ed.2d 300 (1978), in which the allegedly fraudulent misrepresentations or nondisclosures were severely attenuated from the ultimate purchase or sale of securities. All that is required in order to satisfy the in connection with element of a section 10(b) claim is that an investor be injured as a result of deceptive practices "touching" his purchase or sale of securities. *Superintendent of Insurance v. Bankers Life & Casualty Co.*, supra, 404 U.S. at 112–13, 92 S.Ct. at 169; *Jannes v. Microwave Communications, Inc.*, 461 F.2d 525, 529 (7th Cir. 1972). In the instant case, taking Abrams' allegations as true as we are required to do in the context of a motion to dismiss, it cannot be said that there is no connection between the GSC proxy statement and Abrams' purchase. To the extent that the in connection with requirement can be separated from the other elements of a section 10(b) or Rule 10b–5 claim, particularly the causation element, *see, e. g. Brown v. Ivie*, 490 F.Supp. 409, 411 (N.D.Ga.1980), we hold that there is a sufficient nexus between the GSC proxy statement and Abrams' purchase of GSC stock to satisfy this arm of the 10b–5 inquiry.

■ Abrams may not, however, state a claim for relief pursuant to section 10(b) or Rule 10b–5 based upon nondisclosures in GSC's form 10–Ks filed with the Securities and Exchange Commission. This Court and others have stated that the exclusive remedy for misrepresentations or omissions in SEC filings is under section 18(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78r(a). *See Gateway Industries, Inc. v. Agency Rent-A-Car, Inc.*, 495 F.Supp. 92, 98 (N.D.Ill.1980); *Myers v. American Leisure Time Enterprises, Inc.*, 402 F.Supp. 213, 214–15 (S.D.N.Y.1975). Abrams has affirmatively declined to seek relief under section 18(a) apparently preferring to rest on his section 10(b) claim for omissions in GSC's annual report and proxy material.

Accordingly, we proceed to a discussion of Abrams' section 10(b) claim based upon nondisclosures in GSC annual reports and proxy material. To the extent that matters outside the pleadings are considered, the Court will treat defendants' motion as one for summary judgment as required by Fed. R.Civ.P. 12(b).

Preliminarily, defendants maintain that Abrams' section 10(b) cause of action is totally defective because of his failure to allege scienter or that he purchased GSC stock as a result of the nondisclosure of the loan detail. As this case was filed prior to the Supreme Court decisions adding these elements to a section 10(b) cause of action, there was no need to include such allegations initially. In any event, the Court has allowed Abrams to amend his complaint by adding the scienter and purchaser requirements so as to cure the facial defects in the complaint. Whether or not Abrams ultimately will be able to satisfy his burden of proof with regard to these elements is beyond the scope of defendants' immediate objections. Their remaining objections go to the asserted absence of a duty to disclose the loan detail in GSC annual reports and proxy material the immateriality of such information, and the absence of any reliance, loss causation, or provable damages.

■ The argument that no statute, SEC rule, or regulation imposed a particular duty upon the defendants to disclose the details of the loans to certain officers and directors in GSC's annual reports or proxy material [9] begs the crucial question of

---

**9.** Although defendants make much of the argument that the annual report is meant to be an informational statement to shareholders and other interested persons uncomplicated by

whether the undisclosed information was material as that term is used in the context of the federal securities laws. Whether or not there existed a specific duty to disclose the loan detail traceable to a statute, rule, or regulation, the defendants would be required to disclose that information if there was "a substantial likelihood that, under all the circumstances, the omitted fact would have assumed actual significance in the deliberations of the reasonable shareholder." *TSC Industries, Inc. v. Northway, Inc.*, 426 U.S. 438, 449, 96 S.Ct. 2126, 2132, 48 L.Ed.2d 757 (1976). While the question is indeed a close one in the context of the case at bar, we cannot say that as a matter of law at this time that the loan detail would not have been material to the decision-making process of a reasonable investor. The asserted materiality is not limited to the amount of each loan made to GSC insiders as defendants seem to suggest. Abrams also claims that whether or not the loan was secured or unsecured, whether any repayments had been made, the terms of the loan, the maturity date, the interest rate, the reason for the loan, and whether particular loans were current or in default also constituted material information.

 Defendants also contend that even if the omitted loan detail is deemed a

material nondisclosure, evidence of Abrams' nonreliance upon either the annual reports or proxy materials in purchasing the GSC stock is sufficient to rebut the presumption of reliance that usually flows from a finding that there has been a material omission. While affirmative proof of nonreliance is sufficient to rebut the presumption of reliance in a nondisclosure case, *Panter v. Marshall Field & Co.*, 646 F.2d 271 (7th Cir. 1981), it cannot be said as a matter of law at this time that defendants have met their burden. Unlike the cases cited by defendants in which a 10b–5 plaintiff either admitted he did not rely on the documents containing misrepresentations or misstatements or in which it was conclusively shown that the plaintiff could not have so relied, there has been no such admission or conclusive showing as far as Abrams is concerned.[10] Moreover, all the cases cited by defendants herein involved misrepresentations so that reliance had to be established by the plaintiff in a Rule 10b–5 action while the instant case involves nondisclosures so that it is the defendants' burden to conclusively establish nonreliance. *See Huddleston v. Herman & MacLean*, 640 F.2d 534, 548 (5th Cir. 1981). At best, the issue of Abrams' reliance presents fact questions unsuited for resolution in the context of a motion for summary judgment.

what they characterize as "collateral information" such as the loan detail, they conveniently ignore the requirement contained in Schedule 14A, Item 7(e) promulgated by the SEC that imposes a duty to disclose certain details of corporate loans to officers and directors upon corporations engaged in proxy solicitations. Rather, defendants maintain that since any omissions in the proxy statements were not in connection with the purchase or sale of securities, Abrams cannot complain about alleged violations of the proxy rules under section 10(b) or Rule 10b–5. The Court addressed the defendants' "in connection with" argument earlier in this opinion.

10. In *Shores v. Sklar*, 610 F.2d 235, 239 (5th Cir.), *reversed on other grounds*, 617 F.2d 441 (1980), the plaintiff "affirmatively denied seeing or relying on" the offering circular that contained the misrepresentations and omissions. In *Vervaecke v. Chiles, Heider & Co., Inc.*, 578 F.2d 713, 718 (8th Cir. 1978), the plaintiff admitted, with some equivocation, that he did not read the offering circular before purchasing the securities. In *Jezarian v. Csa-*

po, CCH Fed.Sec.L.Rep. [1980 Transfer Binder] § 97, 692 at 98, 639 (S.D.N.Y.1980), the plaintiff conceded that "he did not see the July 29 prospectus, did not ask to see it, and was not interested in seeing it" prior to his stock purchase.

The facts in this case are not as extreme as those cited by defendants. At his deposition in November, 1974, Abrams testified that his broker sent him the latest available financial information prior to his first purchase of GSC stock in early 1970. He assumed, though he could not definitely recall, that he was sent a copy of the GSC annual report for 1969. While at one point Abrams testified that since he was not a GSC shareholder, he would not have received a GSC proxy statement in 1969, he later testified that his broker may have sent him GSC's last proxy statement along with other financial information about the company prior to his purchase. Attempts at refreshing Abrams' recollection with regard to GSC's 1969 annual report were unsuccessful. *See also* note 13, *infra*.

Defendants next maintain that Abrams will be unable to establish that the omission of the loan detail proximately caused him any loss or injury. Rather, defendants urge the Court to take judicial notice of the general decline in the stock market during the early 1970's and the asserted fact that other economic reasons not necessarily attributable to the loans, such as the decreased profitability of GSC's drug company subsidiaries, explain the decline in GSC stock prices. It is not clear as a matter of law, however, that these issues of fact must be conclusively resolved in defendants' favor. While defendants correctly argue that section 10(b) and Rule 10b–5 do not constitute "an insurance plan for the cost of every security purchased in reliance upon a material misstatement or omission," *Huddleston v. Herman & MacLean, supra,* 640 F.2d at 549, the issue of causation is a matter particularly unsuited for disposition on summary judgment. *See also* Bromberg, Securities Law § 8.7(2) at 218 n.79 (1967). At least at this stage of the proceedings, we cannot say that Abrams will not as a matter of law be able to satisfy the threshold of loss causation at a trial on the merits. Although we do not necessarily hold that the question of causation may never be resolved on a motion for summary judgment in a nondisclosure case, we do note that in *Huddleston,* cited frequently by defendants herein, the court of appeals granted the plaintiffs a new trial because of the trial court's failure to submit the reliance and causation issues to the jury. 640 F.2d at 550.

Finally, defendants maintain that even assuming Abrams can satisfy the liability elements of his claim, he has not shown the existence of any provable damages attributable to defendants' actions. In cases arising under section 10(b) and Rule 10b–5, courts generally employ an out-of-pocket rule of damages allowing a defrauded purchaser to recover the price paid for the securities determined as of the time the fraud is discovered plus interest. *Harris v. American Investment Company,* 523 F.2d 220, 224–25 (8th Cir. 1975); *Madigan, Inc. v. Goodman,* 498 F.2d 233, 239 (7th Cir. 1974);

*Cant v. A. G. Becker & Co.,* 379 F.Supp. 972, 974 (N.D.Ill.1974). In the case at bar, the parties disagree as to the operative date upon which the alleged fraud was discovered and the appropriate formula by which damages may be determined. It is unclear whether discovery of the alleged fraud should be deemed to have occurred in mid-1973 with the disclosure of the bankruptcy of one of the borrowing directors, Richard Goodman, or in early 1974 with the disclosure of the loan details in the GSC 1974 proxy statement. Moreover, while the estimates of market activity submitted by the defendants suggest that there may be substantial questions with regard to the fact and extent of damages herein, that does not inexorably to a conclusion that as a matter of law no recovery is possible. In the final analysis, defendants' argument on the damage question devolves into another question regarding causation and materiality, matters this Court earlier stated are not resolvable at this point on summary judgment.

Accordingly, defendants' motion to dismiss or, in the alternative, for summary judgment will be granted with respect to the section 14(a) claim and the section 10(b) claim to the extent it is based upon omissions in GSC form 10–Ks but denied with respect to the remainder of the section 10(b) and Rule 10b–5 claim based upon omissions in the annual reports and proxy material.

### IV.

Plaintiffs herein have moved to certify a class of all purchasers of GSC common stock, excluding defendants and their families, between January 1, 1969, and May 31, 1973. Alternatively, plaintiffs seek certification of a class of purchasers that would close on either December 31, 1970, or April 10, 1970. In our earlier opinion, we declined to certify a proposed class of purchasers of GSC stock between January 1, 1968, and August 1, 1974. At this time, the Court stated that we would be reluctant to certify a class including the many purchasers subsequent to Abrams' final purchase of GSC stock on April 20, 1970. *Issen v. GSC Enterprises, Inc.,* 508 F.Supp. 1298, 1302

(N.D.Ill.1981). Accordingly, and for the reasons set forth in our prior opinion, any class certified herein would only include those persons who purchased GSC stock on or before April 10, 1970, the third alternative class proposed by the plaintiffs.

As a preliminary matter, the plaintiffs have left it to the Court to determine whether to name Abrams, Issen, or both of them as class representatives. Throughout the course of this litigation, Abrams and his counsel, with the stated agreement of Issen and his counsel, have taken the lead in conducting discovery, responding to defendants' various motions to dismiss and for injunctive relief, and moving for class certification.[11] Whether or not Issen has effectively abandoned this case as defendants charge, it is clear that he has not been as intimately involved in this matter during the past five years as have Abrams and his counsel.[12] In such circumstances, and in view of the fact that the plaintiffs themselves apparently have no strong desire to proceed as joint class representatives, Abrams would seem to be the logical representative of the proposed class. The Court suggests that Issen join in the class represented by Abrams so that his claims can be adjudicated therein. Issen is requested to advise the Court within twenty days as to his willingness to do so. Accordingly, we now turn to a discussion of Abrams' qualifications to lead a class of purchasers of GSC stock who purchased between January 1, 1969, and April 10, 1970.

The class proposed in the renewed motion for class certification is much narrower and involves fewer claims than did the proposed class in plaintiffs' initial motion for class certification. The renewed motion only seeks certification with respect to the failure to disclose the details of loans made to certain defendants during the proposed class period of approximately 15 months. The initial motion sought certification with respect to a host of unrelated omissions and misrepresentations chargeable to defendants over the course of approximately 55 months. Defendants continue to oppose class certification on the ground that Abrams and the proposed class fail to meet the requirements of Rule 23 of the Federal Rules of Civil Procedure.

■ Courts generally favor class actions in securities fraud cases, *King v. Kansas City Southern Industries, Inc.*, 519 F.2d 20, 26 (7th Cir. 1975); *Kahan v. Rosenstiel*, 424 F.2d 161 (3d Cir. 1970); *Helfand v. Cenco, Inc.*, 80 F.R.D. 1, 5 (N.D.Ill.1977). Since the claims of individual investors are often too small to merit separate lawsuits, the class action is a useful device in which to litigate similar claims as well as an efficient deterrent against corporate wrongdoing. *Blackie v. Barrack*, 524 F.2d 891 (9th Cir. 1975); *Green v. Wolf Corp.*, 406 F.2d 291 (2d Cir. 1968), *cert. denied*, 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969). The class plaintiffs, however, still must bear the bur-

11. As set forth in Abrams' Memorandum in Support of Issen's Motion to Add a Defendant (filed May 5, 1981) at 5:

By agreement, because these cases have been consolidated for pre-trial and discovery, to avoid any hint of unseemly jockeying among plaintiffs' counsel for the position of lead counsel, and to avoid duplication (all of which experienced plaintiffs' counsel are required to do) Abrams' counsel has acted as plaintiffs' lead counsel in these cases....
By agreement and pursuant to the consolidation, joint plaintiffs' papers have been filed and only one attorney at a time has participated in discovery.

In their Reply Memorandum in Support of Renewed Motion for Class Certification (filed April 15, 1981) at 12 plaintiffs state:

As to the non-merger aspects of this case, Abrams and Issen always have moved together and acted as one. By agreement [Harry A.] Young [Jr.] and members of his firm [Bilandic, Neistein, Richman, Hauslinger & Young, Ltd.] have taken the lead in the non-merger case.

12. For example, Abrams has filed an affidavit (dated April 14, 1981) in which he states that he has "personally reviewed a number of ... pleadings and memoranda in this case" and that he has "made it a point to discuss it with my attorneys and review the current status of the case on a regular basis no less than once every 60 to 90 days." Abrams also states that "I periodically instruct my attorney as to what I feel should be done in the case." Issen has not indicated, by affidavit or otherwise, the extent of his participation in this case.

den of establishing compliance with the four requirements of Rule 23(a) and at least one of the categories listed in Rule 23(b). *Hochschuler v. G. D. Searle & Co.*, 82 F.R.D. 339, 343 (N.D.Ill.1978); *Thompson v. T.F.I. Companies, Inc.*, 64 F.R.D. 140, 145–46 (N.D.Ill.1974). As set forth below, the class proposed herein meets the four requirements of Fed.R.Civ.P. 23(a) and Fed.R. Civ.P. 23(b)(3).

### *Numerosity: Fed.R.Civ.P. 23(a)(1)*

GSC had in excess of 6,000 shareholders in 1969 and 1970 who generated a trading volume of over 200,000 shares per year. Although the exact size of a shareholder class running from January 1, 1969, through April 10, 1970, is unknown, it appears that the class is potentially so numerous that joinder would be impractical as required by Rule 23(a)(1). If it should appear that the class is not as large as expected, the Court will, of course, retain the option to alter, amend, modify, or decertify the class at a later date. Fed.R.Civ.P. 23(c)(1).

### *Common Questions of Law or Fact: Fed.R.Civ.P. 23(a)(2)*

The common questions involved in this case are, broadly, whether the defendants were obligated to disclose the details of loans made to GSC officers and directors and whether the failure to disclose the loan detail violates the federal securities law. The assertedly material omissions occurred in documents circulated throughout the proposed class period. Other courts have found the requisite commonality of law or fact and certified a class of stock purchasers based upon allegations of a series of similar misrepresentations or nondisclosures all related to a common theme and perpetrated over a period of time. *Blackie v. Barrack*, 524 F.2d 891 (9th Cir. 1975); *Green v. Wolf Corp.*, 406 F.2d 291 (2d Cir. 1968), *cert. denied*, 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969); *Piel v. National Semiconductor Corp.*, 86 F.R.D. 357 (E.D. Pa.1980); *Hochschuler v. G. D. Searle & Co.*, 82 F.R.D. 339 (N.D.Ill.1978); *Lewis v. Capital Mortgage Investments*, 78 F.R.D. 295 (D.Md.1977).

In our earlier opinion in this case, *Issen v. GSC Enterprises, Inc.*, 508 F.Supp. 1298 (N.D.Ill.1981), we refused to certify the class then proposed by the plaintiffs on the ground that it lacked the requisite commonality of legal and factual questions. As we said at that time:

the plaintiffs in the instant case have not alleged similar fraudulent misrepresentations or nondisclosures extending throughout the proposed class period or even a common thread or scheme to which all the alleged nondisclosures relate, aside from the general claim of corporate mismanagement or breach of fiduciary duty that seems to pervade the complaint. Some of the purportedly undisclosed loans were repaid or charged off as uncollectible well before the close of the purported class period while other allegedly undisclosed transactions did not occur until near the end of the period. The mere conclusory allegation that the defendants engaged in a common course of conduct by which they failed to disclose certain insider loans at one point in the class period, the true financial position of the corporation and its subsidiaries at another point in the period, and certain questionable payments to or for the benefit of corporate directors or controlling shareholders at still other times during the six-year period, along with various and sundry other nonspecific allegations of nondisclosures, is insufficient to draw this case within the ambit of those cases in which a much narrower standard of commonality of law or fact justified class treatment. Rather, this case is more akin to others in which courts have failed to find a scheme or course of conduct involving common questions of law or fact in a series of separate misrepresentations or nondisclosures occurring over a long period of time. *Fruchthandler v. Blakely*, 73 F.R.D. 318, 321 (S.D.N.Y.1976) ("where the plaintiff alleges omissions from several documents published over a period of time, he must show at least a common thread which unites the several docu-

ments into one common course of action."); *Levine v. American Export Industries, Inc.,* CCH Fed.Sec.L.Rep. ¶ 95, 412 (S.D.N.Y.1976); *Feldman v. Lifton,* 64 F.R.D. 539 (S.D.N.Y.1976). *See also Turner v. First Wisconsin Mortgage Trust,* 454 F.Supp. 899, 908–10 (E.D.Wis. 1978); *Gross v. Diversified Mortgage Investors,* 438 F.Supp. 190, 196 (S.D.N.Y. 1977).

508 F.Supp. at 1301 (footnotes omitted).

By narrowing the scope of the class and the issues to be accorded class treatment, the plaintiffs have now brought this case within the ambit of those in which class certification of common questions has been held to be appropriate. The common course of conduct or scheme in the instant case involves the continued failure to disclose the loan detail allegedly in violation of the federal securities laws. Common questions include, and are not necessarily limited to, the duty to disclose the loan detail, the materiality of that information, the existence of scienter, loss causation, and the effect of the defendants' disclosure of the aggregate loan amounts. Individual questions of reliance do not generally preclude class certification. *Green v. Wolf Corp.,* 406 F.2d 291 (2d Cir. 1968), *cert. denied,* 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969); *Helfand v. Cenco, Inc.,* 80 F.R.D. 1, 9 (N.D.Ill.1977). Accordingly, defendants' objections on this score are without merit with respect to the substantially revised class.

### Typicality: Fed.R.Civ.P. 23(a)(3)

Certain defendants contend that Abrams' claim for relief is not typical of the class he seeks to represent because he is subject to unique defenses relating to his asserted lack of reliance on the GSC form 10–K report filed with the Securities and Exchange Commission for the years 1969 and 1970 and GSC's proxy statements for those years, which documents contain the omissions of the loan detail upon which he bases his section 10(b) claim. As we stated earlier in this opinion, however, Abrams may not state a claim under section 10(b) or Rule 10b–5 based upon omissions contained in GSC form 10–Ks filed with the SEC, the exclusive remedy for such omissions being under section 18(a). Therefore, any dispute as to his reliance on these documents is irrelevant to the class certification question with respect to the section 10(b) claims. The defendants apparently do not dispute Abrams' presumed reliance on the GSC annual report for 1969.

While reliance is generally presumed from a showing of materiality in a nondisclosure case, *Affiliated Ute Citizens v. United States,* 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972), the presumption may be rebutted by the defendants through an affirmative showing of nonreliance. *Panter v. Marshall Field & Company,* 646 F.2d 271, 284 (7th Cir. 1981); *Rochez Brothers, Inc. v. Rhoades,* 491 F.2d 402, 410 (3d Cir. 1973). The defendants in the case at bar maintain that the fact and extent of Abrams' reliance upon GSC proxy statements from which the loan detail was omitted will likely be a major focus of this litigation and that this defense, assertedly unique to Abrams, renders him an atypical member of the class and thus unfit for the role of class representative. Courts in this and other circuits have held that "[w]here it is predictable that a major focus of the litigation will be on an arguable defense unique to the named plaintiff or a small subclass, then the named plaintiff is not a proper class representative." *Koos v. First National Bank of Peoria,* 496 F.2d 1162, 1164–65 (7th Cir. 1974); *Kline v. Wolf,* 88 F.R.D. 696 (S.D.N.Y.1981); *Panzirer v. Wolf,* [1979–80 Transfer Binder] CCH Fed.Sec. 2 Rep. ¶ 97,251 and ¶ 97,363 (S.D.N.Y.1980). *But see Wolgin v. Magic Marker Corp.,* 82 F.R.D. 168, 172–73 (E.D.Pa.1979); *Hurwitz v. R. B. Jones Corp.,* 76 F.R.D. 149, 158 (W.D.Mo.1977).

In support of their contention that Abrams is subject to a unique nonreliance defense, defendants argue that Abrams has admitted that he did not see or rely on GSC proxy statements prior to his stock purchase. At his deposition in November, 1974, over four years from the date he purchased

shares of GSC stock, Abrams testified that he relied on documents sent to him by his broker in early 1970 in deciding whether to purchase the GSC stock. In the Court's view, a fair characterization of Abrams' deposition testimony is that although he could not recall the specific documents he was sent, he thought he saw the GSC annual report for 1969 and thought it possible that he also saw the latest GSC proxy statement. Far from being unique among purchasers of GSC stock as a result of his inability to recall the exact documents he saw prior to his purchase years after the transaction took place, Abrams may be entirely typical of the members of the class he seeks to represent who doubtless would have similar memory problems today.[13] As the Court noted in *Hurwitz v. R. B. Jones Corp., supra,* 76 F.R.D. at 158, "there is nothing 'unique' about a defense of lack of reliance. If it is an issue as defendants contend, it is one that applies to each class member." As we indicated earlier, while affirmative proof of nonreliance will preclude recovery under the securities laws, the existence of individual questions of reliance will not necessarily bar class certification on the common questions involved. *Green v. Wolf Corporation, supra,* 496 F.2d at 301. If necessary, the Court may order separate hearings on the individual questions of reliance after determination of the common questions of law and fact.

The instant case is distinguishable from others in which the named plaintiff in a class action was held to be an inadequate class representative because he or she either admitted nonreliance upon the documents in question or the objective facts indicated that the named plaintiff did not rely upon the documents containing the alleged mis-

representations or nondisclosures. For example, in *Panzirer v. Wolf, supra,* the plaintiff testified at her deposition that she did not see a copy of the company's annual report prior to her purchase of the company's stock. Instead, she said that she bought the stock because of an article about the company that appeared in the Wall Street Journal on the day of her purchase. She later changed her deposition testimony stating that prior to her purchase she also discussed the company with her broker who read to her from the company's Standard & Poor's "tear sheet" which contained some of the information contained in the company's annual report. The court found the plaintiff to be an atypical class representative since there was a genuine issue as to whether she relied primarily on the newspaper article rather than the market's integrity or the alleged misrepresentations in the annual report. *Kline v. Wolf, supra,* is a clearer case of atypicality. There, one of the named class plaintiffs made his first purchase of the company's stock more than a month before the publication of the annual report alleged to contain misrepresentations and two months before it was mailed to shareholders of record. The court labelled the plaintiff's testimony that he read a copy of the annual report before he purchased the stock as simply "implausible" since it was "contradicted by the undisputed fact that the Report, although dated August 18, 1978, was not mailed to shareholders of record until September 8 and 11, 1978." 88 F.R.D. at 698. In *Kline,* the defendant had also submitted an affidavit of the plaintiff's stockbroker in which the broker denied sending the annual report to the plaintiff. The facts in the case at bar are not as extreme as those in either *Panzirer* or *Kline.*

---

13. Although Abrams was not shown a copy of the 1969 GSC proxy statement during his deposition in November, 1974, he now claims that following his deposition his attorney showed him a copy of the 1969 proxy which he recognized as one of the documents he received, reviewed, and relied upon prior to his purchase of GSC stock in 1970. Additional Affidavit of Seymour J. Abrams Opposing Motion To Dismiss Or For Summary Judgment at ¶ 3 (May 21, 1981). Abrams obviously executed this af-

fidavit in an effort to rebut charges that he did not rely on the proxy in making his investment decision. The statement in the affidavit to the effect that Abrams recognized the proxy when he was shown a copy after the deposition is not necessarily inconsistent with his deposition testimony to the effect that he could not recall the exact documents he received without his memory being refreshed. Abrams was not shown a copy of the proxy statement during his deposition.

### Adequacy of Representation: Fed.R.Civ.P. 23(a)(4)

In order to satisfy the requirements of Rule 23(a)(4), the interests of the class representative must coincide with those of the rest of the class and both the class representative and his or her attorney must be prepared to prosecute the action vigorously, tenaciously, and with adequate financial commitment. *Hochschuler v. G. D. Searle & Co.*, 82 F.R.D. 339, 348 (N.D.Ill. 1978). The only potentially serious question with respect to the coincidence of Abrams' claim with those of the class he seeks to represent involves the asserted unique reliance defense applicable to Abrams discussed in the preceding section on the typicality requirement of Rule 23(a)(3). The typicality requirement and the adequacy of representation requirement tend to overlap to this extent, *Helfand v. Cenco, Inc.*, 80 F.R.D. 1, 6 (N.D.Ill.1977), and there is no need to reiterate our prior discussion here.

Regarding the other arm of the inquiry into adequacy of representation, defendants maintain that Abrams and his attorneys have not vigorously prosecuted this case, at least with respect to the pre-merger claims. They argue that this case is now over seven years old and that the plaintiffs have not exhibited the proper degree of interest in bringing the issues raised to a final determination on the merits. As we noted earlier in this opinion, however, the defendants as well as the Court must bear some responsibility for the relatively slow pace of this litigation through the years. Notwithstanding the relative age of this case, the Court notes that during the two years the case has been assigned to our courtroom, Abrams has exhibited that degree of diligence and attention to be expected of a class representative. Moreover, in certifying an unrelated class with Abrams as class representative last April, Judge Flaum, to whom the instant case was previously assigned, noted that Abrams and his counsel vigorously prosecuted this case when it was before him. *Abrams v. Household Finance Corporation*, No. 74 C 2244, Mem.Op. at 8 n.4 (N.D.Ill., April 1, 1980).

In the Court's view, it is imperative that the class be vigorously and competently represented in a case such as this so that the rights of absent class members are adequately protected years after the alleged violations took place. The Court will continually monitor this action to assure that the class is adequately represented now and in the future, and we will of course retain the option to decertify the class should Abrams or his counsel fall below the standard of care required. At this point, however, we cannot agree with the defendants that Abrams or his counsel are unqualified to represent the proposed class.

Finally, the Court is of the opinion that the common questions of law and fact involved in this case predominate over any individual questions and that a class action is a preferred way in which to proceed. Fed.R.Civ.P. 23(b)(3). As noted earlier, individual questions of reliance can be accommodated within the class action context.

Accordingly, a class of purchasers of GSC common stock exclusive of defendants and their families, will be certified for the period between January 1, 1969, and April 10, 1970, with Abrams as class representative. The Court retains the option to modify, alter, or amend the class at a subsequent time should it become necessary to do so. Fed.R.Civ.P. 23(c)(1).

### CONCLUSION

In summary, Abrams' motion to amend his amended complaint is granted, and Issen's motion to amend will be deferred pending his advising the Court as to his willingness to join in the class represented by Abrams. Defendants' motion to dismiss or, in the alternative, for summary judgment is granted in part and denied in part as set forth herein, and a class of purchasers of GSC stock will be certified under Rule 23(b)(3) with respect to the remaining claims under section 10(b) and Rule 10b–5. It is so ordered.