Phillip ISSEN, on behalf of himself and all others similarly situated, and Derivatively on behalf of GSC Enterprises, Inc., Plaintiffs,

v.

GSC ENTERPRISES, INC., The Bank of Lincolnwood, Steinway Drug Company, Ford Hopkins Company, Richard Goodman, Samuel Bergman, Egmont Saunderling, Walter Goodman, Erwin Horwitz, Mason Loundy, Raymond Eiden, Edward Gorenstein, Marshall D. Lieb and Haig Pedian, Defendants.

Seymour ABRAMS, individually and on behalf of himself and all other persons similarly situated, and Derivatively on behalf of GSC Enterprises, Inc. and the shareholders thereof, Plaintiffs,

v.

GSC ENTERPRISES, INC., a corporation, The Bank of Lincolnwood, a corporation, Miller, Cooper & Company, a partnership, Richard Goodman, Walter Goodman, Samuel Bergman, Egmont Sonderling, Erwin Horwitz, Mason Loundy, Raymond Eiden, Edward Gorenstein, Marshall D. Lieb, Haig Pedian, Raymond Eiden, Clyde Wm. Engle, Roger L. Weston, Sierra Capital Group, a limited partnership, the Trustees of the Janice L. Engle Children's Trust, Michael D. Coughlin, William N. Weaver, Jr., and Ronald K. Zuckerman, Defendants.

Nos. 74 C 0346 and 74 C 2215.

United States District Court,
N. D. Illinois, E. D.

Jan. 28, 1981.

Pressman & Hartunian, Chicago, Ill., for plaintiffs.

Richard Goodman, pro-se.

Hubachek, Kelly, Rauch & Kirby, Torshen, Fortes & Eiger, William N. Weaver/Jack L. Block, Joel Feldman, and Stephen M. Merrick, Sachnoff, Schrager, Jones & Weaver, John T. Coleman/Norman J. Barry, Baker & McKenzie, Edward A. Gorenstein, Lieb, Pedian, Eiden, Gorenstein, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

A detailed history of these consolidated cases is set forth in this Court's earlier opinion in *Issen v. GSC Enterprises, Inc.*, 508 F.Supp. 1278 (N.D.Ill.1981). Presently before the Court is the motion of plaintiffs, Phillip Issen ("Issen") (No. 74–346) and Seymour Abrams ("Abrams") (No. 74–2215), for class certification pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure. Plaintiffs seek to challenge, on behalf of the class, certain securities transactions with the defendants as violative of sections 10(b) and 14(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b), 78n(a), and Rules 10b–5 and 14a–9 promulgated thereunder by the Securities and Exchange Commission. For the reasons set forth below, plaintiffs' motion for class certification is denied.

Courts generally favor class actions in securities fraud cases, *King v. Kansas City Southern Industries, Inc.*, 519 F.2d 20, 26 (7th Cir. 1975); *Kahan v. Rosenteil*, 424 F.2d 161 (3d Cir. 1970); *Helfand v. Cenco, Inc.*, 80 F.R.D. 1, 5 (N.D.Ill.1977). Since the claims of individual investors are often too small to merit separate lawsuits, the class

action is a useful device in which to litigate similar claims as well as an efficient deterrent against corporate wrongdoing. *Blackie v. Barrack*, 524 F.2d 891 (9th Cir. 1975); *Green v. Wolf Corp.*, 406 F.2d 291 (2d Cir. 1968), *cert. denied*, 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969). Although within the context of a motion for class certification, a court should not concern itself with the ultimate determination of the merits of a case, *Eisen v. Carlisle & Jacquelyn*, 417 U.S. 156, 177–78, 94 S.Ct. 2140, 2152, 40 L.Ed.2d 732 (1974); *Lamb v. United Security Life Co.*, 59 F.R.D. 25, 35 (S.D. Iowa 1972), the class plaintiffs still must bear the burden of establishing compliance with the four requirements of Rule 23(a) and at least one of the categories listed in Rule 23(b). *Hochschuler v. G. D. Searle & Co.*, 82 F.R.D. 339, 343 (N.D.Ill.1978); *Thompson v. J. F. I. Companies, Inc.*, 64 F.R.D. 140, 145–46 (N.D.Ill.1974).

Plaintiffs in the instant case propose a class defined as:

> All purchases of common stock of defendant GSC Enterprises, Inc., who acquired such stock between January 1, 1968, and August 1, 1974, except defendants and their families.[1]

Defendants, GSC Enterprises, Inc. ("GSC"), Bank of Lincolnwood, Samuel Bergman, Erwin Horwitz, Mason Loundy, Raymond Eiden, Marshall Lieb, Haig Pedian, Miller, Cooper & Company, and Edward Gorenstein, oppose plaintiffs' motion for class certification on the grounds that plaintiffs have not shown that there are questions of law or fact common to the purported class as required by Rule 23(a)(2)—nor that such common questions, if they do exist, predominate over individual questions as required by Rule 23(b)(3). Defendants also argue that plaintiffs' claims are not typical of the class they seek to represent [Rule 23(a)(3)] and that they are inadequate representatives for the proposed class [Rule 23(a)(4)].

---

1. The plaintiffs are members of this purported class, which allegedly includes over 1,000 purchases of GSC common stock. Plaintiff Phillip Issen purchased 150 shares of stock in GSC Enterprises, Inc. on May 19, 1969, at $10.00 per share. Plaintiff Seymour Abrams purchased his GSC stock as follows:

| Date | Amount | Price |
|------|--------|-------|
| 2/05/70 | 200 shares | $3¾ |
| 2/05/70 | 300 shares | 3⅞ |
| 3/30/70 | 300 shares | 3¾ |
| 4/10/70 | 200 shares | 3½ |

Plaintiffs allege that "commencing prior to December 31, 1968," the defendants entered into a scheme or conspiracy whereby they caused the Bank of Lincolnwood, a wholly-owned subsidiary of GSC, to make various loans to certain of the defendants without adequate collateral and at unreasonably low interest rates in situations in which the likelihood of repayment and the solvency of the borrowing defendant was doubtful, all without proper disclosure to members of the plaintiff class. These supposedly undisclosed loans, the exact number, date, and amount of which remain unspecified by the plaintiffs, were allegedly made during a period stretching between 1968 and 1973. Plaintiffs charge that these loans were not disclosed in proxy statements, financial reports, or documents filed with the SEC. Plaintiffs further claim that the defendants failed to disclose the true financial condition of Steinway Drug Co. and Ford Hopkins Drug Co., both GSC subsidiaries, in annual reports, proxy statements, and SEC filings during this period and also failed to disclose that the drug company subsidiaries were sold at less than fair market value sometime in 1973. The defendants also allegedly failed to disclose the payment of inflated insurance premiums to an insurance agency controlled by one of the defendants between 1972 and 1973, failed to disclose inflated rental payments to a company partially controlled by one of the defendants from 1969 to 1973, and failed to disclose other questionable payments during that same rough time period. These alleged nondisclosures continuing in varying degrees over an extended period of time are alleged to be part of a common scheme or course of conduct by which defendants supposedly conspired to defraud investors in GSC and benefit themselves.

Defendants contend that the series of nondisclosures alleged by plaintiffs, occurring as they allegedly did at different times throughout the approximate six-year class period, does not amount to a "course of conduct" giving rise to common legal or factual questions as required by Rule 23(a)(2). While many courts have found the requisite commonality of law or fact and certified a class of stock purchasers based upon allegations of a series of similar misrepresentations or nondisclosures perpetrated over a period of time, *Blackie v. Barrack*, 524 F.2d 891 (9th Cir. 1975); *Green v. Wolf Corp.*, 406 F.2d 291 (2d Cir. 1968), *cert. denied*, 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969); *Piel v. National Semiconductor Corp.*, 86 F.R.D. 357 (E.D. Pa.1980); *Hochschuler v. G. D. Searle & Co.*, 82 F.R.D. 339 (N.D.Ill.1978); *Lewis v. Capital Mortgage Investments*, 78 F.R.D. 295 (D.Md.1977), these cases are distinguishable from the case at bar. In each case the plaintiffs alleged some common misrepresentation or nondisclosure manifested in various documents disseminated over the class period or, at least, alleged a single common thread or theme to which all the fraudulent activity related.

In *Blackie v. Barrack, supra,* for example, the alleged nondisclosures were repeated in some 45 documents issued by the defendants over a 27-month period, all relating to certain alleged inadequacies in the company's financial reporting—failure to disclose the need for loss reserves, the value of inventory, etc. In *Piel v. National Semiconductor, supra,* "the brunt of the plaintiff's claims allege[d] a conspiracy to maintain an inflated value of NSC common shares of stock." 86 F.R.D. at 368. The court went on to say that "[i]n essence, therefore, the plaintiff has alleged that the defendants' conduct constituted a common nucleus of operative facts or a single, unitary scheme, the total effect of which constituted a violation of the federal securities laws." *Id.*

Similarly, in *Hochschuler v. G. D. Searle & Co., supra,* all the alleged nondisclosures and misrepresentations related to the safety of three drugs manufactured by the defendant. According to the *Hochschuler* court, "[p]laintiffs contend that at a time when doubt existed as to the safety of these drugs, the defendants chose to emphasize their safety and their importance to the continued profitability of Searle." 82 F.R.D. at 342–43. In *Lewis v. Capital Mortgage Investments, supra,* the plaintiffs alleged that the defendant's annual and quarterly reports issued over a ten-month

period overstated net earnings and dividends because they failed to provide adequate reserves for loan losses. The court noted that "[a]lthough members of the class may have to rely on different economic conditions in establishing the inadequacy of loan loss reserves in the financial report immediately preceding their purchase, they have a common interest in establishing the proper method for determining adequate loan loss reserves." 78 F.R.D. at 305. *See also* the discussion in *Feldman v. Lifton*, 64 F.R.D. 539, 544–47 (S.D.N.Y.1976).

By contrast, the plaintiffs in the instant case have not alleged similar fraudulent misrepresentations or nondisclosures extending throughout the proposed class period or even a common thread or scheme to which all the alleged nondisclosures relate, aside from the general claim of corporate mismanagement or breach of fiduciary duty that seems to pervade the complaint. Some of the purportedly undisclosed loans were repaid or charged off as uncollectible well before the close of the purported class period while other allegedly undisclosed transactions did not occur until near the end of the period. The mere conclusory allegation that the defendants engaged in a common course of conduct by which they failed to disclose certain insider loans at one point in the class period, the true financial position of the corporation and its subsidiaries at another point in the period, and certain questionable payments to or for the benefit of corporate directors or controlling shareholders at still other times during the six-year period, along with various and sundry other nonspecific allegations of nondisclosures, is insufficient to draw this case within the ambit of those cases in which a much narrower standard of commonality of law

or fact justified class treatment. Rather, this case is more akin to others in which courts have failed to find a scheme or course of conduct involving common questions of law or fact in a series of separate misrepresentations or nondisclosures occurring over a long period of time. *Fruchthandler v. Blakely*, 73 F.R.D. 318, 321 (S.D.N.Y.1976) ("where the plaintiff alleges omissions from several documents published over a period of time, he must show at least a common thread which unites the several documents into one common course of action."); *Levine v. American Export Industries, Inc.*, CCH Fed.Sec.L.Rep. ¶ 95,412 (S.D.N.Y.1976); *Feldman v. Lifton*, 64 F.R.D. 539 (S.D.N.Y.1976). *See also Turner v. First Wisconsin Mortgage Trust*, 454 F.Supp. 899, 908–10 (E.D.Wis.1978); *Gross v. Diversified Mortgage Investors*, 438 F.Supp. 190, 196 (S.D.N.Y.1977).[2]

Even if this Court were to find that plaintiffs have sufficiently alleged a common course of conduct presenting common questions of law or fact for purposes of Rule 23(a)(2), we would be unable to hold at this time that plaintiffs' claims are typical of the entire class they seek to represent as required by Rule 23(a)(3) or that they are adequate representatives for that class as required by Rule 23(a)(4). The elements of these two subsections of Rule 23 tend to overlap, and much of the concern with the typicality of the class representatives claims and defenses under Rule 23(a)(3) is subsumed within the broader requirement of adequacy of representation required by Rule 23(a)(4). *Helfand v. Cenco, Inc.*, 80 F.R.D. 1, 6 (N.D.Ill.1977).

Defendants maintain that because Issen and Abrams purchased their GSC shares early in the class period and before a great

---

**2.** While we recognize that other courts have held that "where a common scheme of deception has been alleged, a common question exists even if the plaintiff's suit is based on otherwise unrelated nondisclosures or misrepresentations," *Simon v. Westinghouse Electric Corp.*, 73 F.R.D. 480, 483 (E.D.Pa.1977); *In Re U. S. Financial Securities Litigation*, 64 F.R.D. 443 (S.D.Cal.1974); *Siegel v. Realty Equities Corp. of New York*, 54 F.R.D. 420 (S.D.N.Y.1972), we are unpersuaded by the reasoning of these cases in the circumstances presented by the

case at bar. If class certification followed as a matter of course whenever a plaintiff included an allegation in his or her pleading that the defendants operated according to a common scheme or course of conduct, regardless of the dissimilarities among the particular acts alleged to be part of this common design, the class action device would be stretched beyond the useful purpose for which it was designed and has served well, particularly in securities fraud cases.

many of the alleged nondisclosures took place, they would have little incentive to prove the materiality of nondisclosures made subsequent to their own stock purchases since, in order to recover their own individual claims, they need only show that a duty to disclose certain information arose prior to their own purchases. For this reason, several courts have held that class plaintiffs in a securities fraud case may not represent persons who purchased their shares after the date of the class plaintiffs' final purchase. *See Simon v. Westinghouse Electric Corp.*, 73 F.R.D. 480 (E.D.Pa.1977); *Fruchthandler v. Blakely*, 73 F.R.D. 318 (S.D.N.Y.1976); *Levine v. American Export Industries, Inc.*, CCH Fed.Sec.L.Rep. ¶ 95,- 412 (S.D.N.Y.1976) (sub-classes established); *Stull v. Baker*, CCH Fed.Sec.L.Rep. ¶ 94,227 (S.D.N.Y.1973); *In re Memorex Security Cases*, 61 F.R.D. 88 (N.D.Cal.1973). Other courts, however, have taken a contrary position, and have allowed the named plaintiffs to represent class members who purchased their shares a relatively short time after the plaintiffs' purchases.[3] *See Hochschuler v. G. D. Searle & Co.*, 82 F.R.D. 339, 347 (N.D.Ill.1978) (two years); *Piel v. National Semiconductor Corporation*, 86 F.R.D. 357, 372 n.17 (E.D.Pa.1980) (six months); *Lewis v. Capital Mortgage Investments*, 78 F.R.D. 295, 301–02 (D.Md.1977) (five months); *Cohen v. Uniroyal, Inc.*, 77 F.R.D. 685, 693 (E.D.Pa.1977) (15 days); *Elkind v. Liggitt & Myers, Inc.*, 77 F.R.D. 708, 712 (S.D.N.Y. 1978) (six days); *Bisgeier v. Fotomat Corp.*, 62 F.R.D. 113, 117 (N.D.Ill.1972); *Weiss v. Tenney Corporation*, 47 F.R.D. 283 (S.D.N. Y.1972). *See also* Newberg, *Class Actions* § 8818b (1977).

The latter line of authority primarily includes cases in which the class plaintiffs alleged a common scheme or course of conduct made up of one constant or a series of similar misrepresentations or nondisclosures. In such situations, the class plaintiff is often given the benefit of any doubt that he will have sufficient incentive to prove the claims of after-acquiring shareholders since the proof required to show similar acts of wrongdoing is not so different from that required to prove his own claim. "In such a case, the facts necessary to prove the named plaintiff's claim generally would be sufficient to prove the claims of other class members." *Simon v. Westinghouse Electric Corp.*, 73 F.R.D. 480, 485 (E.D.Pa.1977); *Bisgeier v. Fotomat Corp., supra*, 62 F.R.D. at 117. However, in the case at bar, the alleged nondisclosures in the middle and latter portion of the purported class period are of a different sort than those in the beginning of the period. The only possible material nondisclosures prior to plaintiffs' purchase relate to some of the allegedly undisclosed insider loans from the Bank of Lincolnwood, while subsequent to the purchases in 1969 and 1970 the defendants allegedly failed to disclose the financial condition of GSC subsidiaries, the sale of these subsidiaries for less than fair market value, and assorted payments to or for the benefit of the individual defendants. Under these circumstances, proof of the class representatives claims would not necessarily include proof of the claims of after-acquiring class members. Thus, even if this Court were inclined to certify a class represented by the plaintiffs herein, we could not in good faith certify a class including the many purchasers subsequent to the final purchase by Abrams on April 10, 1970. *See Simon v. Westinghouse Electric Corp., supra*, 73 F.R.D. at 485.[4]

3. In the instant case, plaintiffs seek to represent persons who purchased GSC shares four years and four months after Abrams' last purchase and over five years after Issen's purchase of GSC shares.

4. The other arm of the inquiry into adequacy of representation under Rule 23(a)(4), other than that the interests of the class representative sufficiently coincide with those of the rest of the class, is that the class representative and his attorney be prepared to prosecute the ac-

tion vigorously, tenaciously, and with an adequate financial commitment. *See Wetzel v. Liberty Mutual Insurance Co.*, 508 F.2d 239, 247 (3d Cir. 1975); *Piel v. National Semiconductor Corp.*, 86 F.R.D. 357, 367 n.7 (E.D.Pa. 1980); *Hochschuler v. G. D. Searle & Co.*, 82 F.R.D. 339, 348 (N.D.Ill.1978). The defendants in this case maintain that the plaintiffs know very little about the facts of this lawsuit and that they are totally dependent on their lawyers' knowledge of the case. Plaintiffs contend, however, that extensive depositions and

Accordingly, for the reasons set forth above, plaintiffs' motion for class certification is denied. It is so ordered.

affidavits made by both Issen and Abrams refute these contentions. Of more concern to this Court at this time are the events that have transpired subsequent to the filing of the original complaints in this action. After the going private merger of GSC in October, 1977, plaintiff Abrams amended his complaint to assert new class allegations on behalf of a different class of GSC shareholders than that proposed in this aspect of the case. Plaintiff Issen has also joined with another GSC shareholder, Maurice Settler, in a purported class action filed in Delaware state court seeking appraisal in the wake of the going private merger. That action has been stayed for the time being. *Issen v. GSC Enterprises, Inc.*, Civ. Action No. 5452 (Del.Ch. Newcastle County). While a plaintiff is not necessarily an inadequate class representative because of his participation in several class lawsuits, *Lewis v. Capital Mortgage Investments*, 78 F.R.D. 295, 303 (D.Md. 1977), this Court does question whether the instant plaintiffs would provide adequate representation for the proposed class in the case at bar.