Phillip ISSEN, on behalf of himself and all others similarly situated, and Derivatively on behalf of GSC Enterprises, Inc., Plaintiffs,

v.

GSC ENTERPRISES, INC., the Bank of Lincolnwood Steinway Drug Company, Ford Hopkins Company, Richard Goodman, Samuel Bergman, Egmont Sonderling, Walter Goodman, Erwin Horwitz, Mason Loundy, Raymond Eiden, Edward Gorenstein, Marshall D. Lieb and Haig Pedian, Defendants.

Seymour ABRAMS, individually and on behalf of himself and all other persons similarly situated, and Derivatively on behalf of GSC Enterprises, Inc. and the shareholders thereof, Plaintiffs,

v.

GSC ENTERPRISES, INC., a corporation, the Bank of Lincolnwood, a corporation, Miller, Cooper & Company, a partnership, Richard Goodman, Walter Goodman, Samuel Bergman, Egmont Sonderling, Erwin Horwitz, Mason Loundy, Raymond Eiden, Edward Gorenstein, Marshall D. Lieb, Haig Pedian, Raymond Eiden, Clyde Wm. Engle, Roger L. Weston, Sierra Capital Group, a limited partnership, the Trustees of the Janice L. Engle Children's Trust, Michael D. Coughlin, William N. Weaver, Jr., and Ronald K. Zuckerman, Defendants.

Nos. 74 C 0346, 74 C 2215.

United States District Court,
N. D. Illinois, E. D.

April 29, 1982.

Aram Hartunian, Pressman & Hartunian, Chicago, Ill., for plaintiffs.

Margaret Maxwell, Hubachek, Kelly, Rauch & Kirby, Jack L. Block, Sachnoff, Schrager, Jones, Weaver & Rubenstein, Ltd., Robert S. Milnikel, Peterson, Ross, Schloerb & Seidel, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Eight years have elapsed since this litigation commenced between plaintiffs Phillip Issen ("Issen") in 74 C 0346, Seymour Abrams ("Abrams") in 74 C 2215, and a host of corporate and individual defendants related to GSC Enterprises, Inc. ("GSC") and its wholly-owned subsidiaries. A detailed review of the substance and progress of this securities litigation can be found in this Court's prior opinions.[1] Presently before the Court are six separate motions.

In *Abrams*, 74 C 2215: (1) Defendant Miller, Cooper & Co. ("Miller, Cooper"), certified public accountants for GSC, has moved for reconsideration of its prior order certifying a class for Abrams' claims under § 10(b) of Securities Exchange Act of 1934 and SEC Rule 10b–5. (2) Abrams has moved to obtain approval of its proposed class action notice prepared pursuant to that prior order. (3) Various other *Abrams* defendants have moved for summary judgment on Abrams' claims under SEC Rule 10b–5 as they relate to defendants' duty to disclose material information in GSC's annual reports. (4) Those same defendants have moved to dismiss the final derivative count on behalf of GSC shareholders remaining in Abrams' complaint.

In *Issen*, 74 C 0346: (5) Various defendants have moved to dismiss the entire complaint for want of prosecution. (6) Issen has moved to amend his first amended complaint.

The Court will deal with each of these motions in seriatim.

### Motions In Abrams

1. Defendants' Motion for Reconsideration

On August 28, 1981, pursuant to Rule 23, Fed.R.Civ.P. this Court certified a plaintiff class consisting of "purchasers of GSC common stock exclusive of defendants and their families . . . for the period between January 1, 1969 and April 10, 1970."[2] *Issen v. GSC Enterprises, Inc.*, 522 F.Supp. 390, 404 (N.D.Ill.1981). Defendant Miller, Cooper now moves the Court to reconsider this class certification on the theory that Abrams' underlying complaint, initially filed in 1974, did not expressly include as members of the plaintiff class purchasers of GSC common stock in 1969. That complaint simply identified the class as those individuals who purchased GSC common stock after January 1, 1970 and before the filing of the complaint.[3] Abrams complaint, ¶¶ 10, 19, 22. Thus, Miller, Cooper argues the class certified by this Court in August includes as class members persons

---

1. *Issen v. GSC Enterprises, Inc.*, 508 F.Supp. 1278 and 1298 (N.D.Ill.1981) (two opinions). The pre-merger aspects of both these cases involve alleged nondisclosures of material information in connection with the purchase and sale of GSC stock between 1969 and 1974 in violation of state law, section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) (1976), and the rules promulgated thereunder by the Securities and Exchange Commission ("SEC"). Abrams has also challenged the propriety of a going private merger accomplished by GSC in October, 1977, under both federal securities and Delaware law.

2. This class was one of three alternative classes proposed in plaintiffs' renewed motion for class certification filed on February 13, 1981. Although this motion was jointly filed by Abrams and Issen, the class certification by this Court in August related solely to Abrams' cause of action. *See* fn. 4, *infra*.

3. The plaintiffs ultimately chose April 10, 1970, as the closing date for the class in response to this Court's Memorandum Opinion and Order of January 28, 1981. *Issen v. GSC Enterprises, Inc.*, 508 F.Supp. 1298 (N.D.Ill.1981).

who are outside the scope of the underlying cause of action and cannot now join that action after the running of the statute of limitations.[4]

In our view, Miller, Cooper reads the complaint too narrowly. Although it is true that Abrams initially brought this action on behalf of purchasers of GSC common stock after January 1, 1970, it is also correct that the wrongdoing alleged in that complaint commenced at some time "prior to December 31, 1968." Complaint, ¶ 12. The theory underlying Abrams' cause of action, therefore, applies with equal force to 1969 purchasers of GSC common stock. That Abrams did not originally identify such purchasers as members of the plaintiff class does not alter the substantive nature or scope of Abrams' initial cause of action.

It is well settled that a plaintiff can amend its complaint at any time to add real parties in interest to the original cause of action. Fed.R.Civ.P. 17(a). Because the cause of action asserted in Abrams' initial complaint effectively encompassed the claims of these 1969 purchasers, their addition to the plaintiff class does not constitute the initiation of a separate cause of action. Accordingly, the claims of such purchasers are not barred by the statute of limitations.

Even if the addition of 1969 purchasers to the plaintiff class rises to the level of a separate cause of action against Miller, Cooper, an amendment asserting such a claim would relate back to the date of the original complaint. Fed.R.Civ.P. 15(c). However narrowly Abrams' initial complaint is read, there can be no dispute that the claims of 1969 purchasers fall within the ambit of the conduct, transaction or occurrence set forth in the original pleading. Cf. *Barnes v. Callaghan & Co.*, 559 F.2d 1102, 1106 (7th Cir. 1977). See *generally* 6 Wright and Miller, Federal Practice and Procedure, §§ 1496–97, 1501 (1971). Abrams' original complaint, taken as true for purposes of this motion, gave Miller, Cooper full notice of a claim arising from conduct which would have influenced 1969 as well as 1970 purchasers of GSC common stock. Thus, Miller, Cooper cannot establish any prejudice resulting from the addition of these plaintiffs, even if their claim technically constitutes a separate cause of action.[5] Cf. *Staren v. American National Bank & Trust Co. of Chicago*, 529 F.2d 1257, 1263 (7th Cir. 1976); *Paskuly v. Marshall Field & Co.*, 494 F.Supp. 687, 688–89 (N.D. Ill.1980), aff'd 646 F.2d 126 (7th Cir. 1981).

This Court's class certification order does not permit the plaintiff class to assert

4. Part of the confusion over the opening dates of the plaintiff class arises from the fact that *Abrams* and *Issen* were consolidated for pretrial purposes and appeared to be ready for full consolidation on the pre-merger claims as of the August decision of this Court. Indeed, after some delay and considerable argument by Miller, Cooper, Issen joined Abrams in the renewed motion for class certification at issue here. For class certification purposes, however, the *Issen* claim and the *Abrams* claim differed in two respects: Issen's complaint was brought on behalf of a class which opened on January 1, 1968 (as opposed to January 1, 1970) and Issen's complaint did not name Miller, Cooper as a defendant. Thus, Miller, Cooper argues that the plaintiff class in the present action, however it is structured, cannot include purchasers of GSC common stock in 1969 at least as far as Miller, Cooper is concerned. As discussed *infra*, however, because this Court's class certification in *Abrams* was not premised upon a consolidation with *Issen*, this issue is academic. As will be seen, Abrams' initial complaint alone is sufficient to support the

certification of a class going back to January 1, 1969 in 74 C 2215.

5. Miller, Cooper argues that Abrams' complaint gave them no notice of a possible claim by 1969 purchasers of GSC common stock because any wrongdoing by defendants in 1968 would not have influenced Abrams as an investor until the publication of the 1969 Annual Report in early 1970. Any wrongdoing which occurred in 1968, however, should have been disclosed in the 1968 Annual Report available to investors in 1969. Miller, Cooper's attempt to characterize these 1969 non-disclosures as "foundational" for Abrams' complaint is disingenuous. The fact is that the claims of 1969 purchasers arise out of precisely the same transactions and occurrences alleged in Abrams' original complaint. Moreover, even if only "foundational," these 1969 non-disclosures already have been or should have been the focus of considerable pretrial preparation and discovery. In light of such notice, Miller, Cooper cannot be heard to argue now that it is unprepared to defend against the claims of 1969 purchasers.

claims they could otherwise not assert. An amendment to Abrams' complaint explicitly naming 1969 purchasers as members of the plaintiff class would not be barred by the statute of limitations.[6] Accordingly, Miller, Cooper's motion for reconsideration of this Court's class certification order is denied.

**2. Plaintiffs' Motion to Present Class Action Notice**

■ Our denial of Miller, Cooper's motion for reconsideration on the class certification issue also effectively disposes of Miller, Cooper's objection to Abrams' motion to present class action notice. Since the *Abrams* class properly includes 1969 purchasers of GSC common stock, the class action notice proposed by plaintiffs is not misleading or inaccurate as to Miller, Cooper or any other defendant. On the contrary, our review of the proposed class notice satisfies us that the notice clearly and fairly apprises potential class members of the nature of this action as well as the scope of their rights. Therefore, this Court approves plaintiffs' proposed class notice pursuant to Rule 23(c)(2) Fed.R.Civ.P.

**3. Defendants' Motion for Partial Summary Judgment**

Through a renewed motion for summary judgment, various defendants seek reconsideration of this Court's prior conclusion that, notwithstanding the absence of an explicit statutory or regulatory duty to do so, defendants were required to disclose in GSC's annual reports all information which would likely be material to the decisionmak-

ing process of a reasonable investor under Rule 10b–5. *Issen*, 522 F.Supp. at 398. This motion is intended to dispose of Abrams' allegation that defendants violated Rule 10b–5 when they failed to disclose material loan detail in GSC's annual reports.[7] Defendants argue in essence that a showing of the materiality of the omitted loan detail is not enough to establish an affirmative duty to disclose in the annual report under Rule 10b–5. For the following reasons, however, defendants' renewed motion for summary judgment must be denied.

Defendants' motion is predicated on the theory that the duty to disclose a particular fact in the annual report is not triggered simply by a finding that such a fact is material. Instead, defendants argue, the duty to disclose information is a separate element of an alleged Rule 10b–5 violation which must have some independent statutory or fiduciary basis other than materiality. This view is supported in the abstract by the Supreme Court's recent decision in *Chiarella v. United States*, 445 U.S. 222, 100 S.Ct. 1108, 63 L.Ed.2d 348 (1980). *Chiarella* held generally that a criminal defendant could not be held to an affirmative duty to disclose material facts with regard to a company's stock in which he was dealing in the absence of either an explicit statute or regulation establishing such a duty or a "special relationship" of trust and confidence between the defendant and sellers of the stock at issue. *Id.* at 232, 100 S.Ct. at 1116. This general rule of *Chiarella* does not, however, advance defendants' motion for summary judgment.

---

**6.** Pursuant to this Court's authority under Rule 23(d), Fed.R.Civ.P., plaintiffs are directed to amend their complaint to reflect the class certified by this Court in August. That a class was certified by the Court pursuant to motion before plaintiffs amended their complaint is of no significance. The Court's order was intended to conform the class to the underlying cause of action. Even if the claims of 1969 purchasers constitute separate causes of action, however, the principle of relation back should not be defeated merely because the amendment follows rather than precedes class certification.

**7.** Although Abrams has also alleged that Rule 10b–5 triggers an affirmative duty to disclose loan detail in proxy materials, defendants' mo-

tion is limited to the legality of their alleged non-disclosure in the annual reports. The loan detail allegedly omitted from GSC's annual reports included the terms and conditions of specific loans by the Bank of Lincolnwood to GSC insiders, unpaid balances on individual loans, defaults, recoveries and whether those terms were more favorable than insiders could otherwise obtain. As with all motions for summary judgment, we will view the facts in the light most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). Thus, for purposes of this motion, we assume that the loan detail in question was material.

*Chiarella* was a criminal non-disclosure case brought by the SEC under Rule 10b–5.[8] Chiarella was a corporate outsider who bought stock in a target company based on inside information he gleaned from five announcements of corporate takeover bids passing through his hands in his capacity as a "markup man" for a New York financial printer. The Supreme Court concluded that despite his knowledge of material information regarding the impending takeover, the defendant could not be found criminally liable for non-disclosure of that information because he did not have any special or fiduciary relationship with the sellers of the securities he purchased; he was, in fact, a complete stranger to those sellers. *Chiarella*, 445 U.S. at 232–33, 100 S.Ct. at 1116–17.

■ Defendants in the present case, on the other hand, are insiders of GSC who are not complete strangers to the investing public. Although defendants have never engaged in any face-to-face transactions with Abrams or other members of the plaintiff class, by publishing an annual report, the accuracy and completeness of which is relied upon by the investing public, defendants do share a special relationship with Abrams and the plaintiff class. Under *Chiarella*, therefore, defendants had an affirmative duty to disclose facts material to the investing public in the annual report.[9] Any other result would render the annual

report a valueless document for potential investors and shareholders alike.

■ As *Chiarella* recognizes, the concept that an affirmative duty to disclose exists between those sharing a "special relationship" is derived from the law of torts. *See Chiarella*, 445 U.S. at 228 n.9, 100 S.Ct. at 1114 n.9. The common law of torts also provides that when a party makes a materially incomplete disclosure, that party has the duty to disclose whatever additional material information is necessary to prevent the partial disclosure from misleading the recipient.[10] Restatement (Second) of Torts, § 551(2)(b) and Comment g (1976). Under Rule 10b–5, when a party undertakes to disclose anything, it has the duty to speak the full truth. *Cf. First Virginia Bankshares v. Benson*, 559 F.2d 1307, 1317 (5th Cir. 1977), *cert. denied*, 435 U.S. 952, 98 S.Ct. 1580, 55 L.Ed.2d 802 (1978). In the present case, therefore, to the extent the loan detail at issue was material, defendants' failure to disclose that detail in the annual reports constitutes a potential violation of Rule 10b–5.

This Court is not unaware that the annual reports of many comparable business concerns do not typically disclose the existence or terms of loans to insiders. Requiring disclosures of this kind would, no doubt, impose an additional burden on such companies. The absence of such disclosures in the

---

**8.** Since *Chiarella* is a criminal case, the Supreme Court's description of the contours of 10b–5 disclosure duty may not be applicable to the civil context of this case. In any event, however, the duty of disclosure in the civil context is at least as great as that described in *Chiarella*.

**9.** Defendants argue that a "special relationship" sufficient to trigger an affirmative duty to disclose exists only between (1) insiders and shareholders, and (2) buyers and sellers in face-to-face transactions. This is an unjustifiably cramped view of *Chiarella*. Although Justice Powell used the insider/shareholder and buyer/seller relationships as examples of contexts in which an affirmative disclosure duty might arise, it is clear from the rest of the opinion that those are not the only circumstances in which an affirmative duty exists. Indeed, Justice Powell did not restrict his buyer/seller example to those engaged in face-to-face transac-

tions. According to *Chiarella*, an affirmative duty exists between sellers and "person[s] in whom the sellers had placed their trust and confidence." *Chiarella*, 445 U.S. at 232, 100 S.Ct. at 1116. In the present case, it would seem clear that reasonable investors should be able to place their trust and confidence in the annual report issued by the corporation. The absence of a face-to-face transaction between the parties should not be controlling. *Shapiro v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 353 F.Supp. 264, 276 (S.D.N.Y.1972), *aff'd* 495 F.2d 228 (2d Cir. 1974).

**10.** This duty runs to those members of the investing public who rely or can be expected to rely on the representations made by the corporation. *See* Restatement (Second) of Torts, §§ 531, 534 (Comment c). *See also* § 529. Abrams and the plaintiff class would seem to fall within this description.

past, however, although possibly relevant to the issue of materiality, does not cast light on the broader question whether corporate insiders have a duty to disclose all material facts in annual reports. Whatever the custom or practice, this Court cannot escape the conclusion that permitting corporations to omit material facts in their annual reports would frustrate the purpose and intent of the policy in favor of disclosure embodied generally in the securities laws. Accordingly, defendants' renewed motion for summary judgment is denied.

### 4. Motion to Dismiss Derivative Count

■ Various defendants have also moved this Court to dismiss the pre-merger derivative claim asserted by Abrams in Count IV of his complaint. Brought on behalf of Abrams, GSC and all other GSC shareholders similarly situated, Count IV alleges basically that the wrongful pre-merger acts underlying several of plaintiffs' other claims against defendants also constitute an actionable breach of defendants' fiduciary duty toward GSC and its shareholders. A parallel argument was earlier rejected by this Court with regard to Abrams' post-merger derivative claim against defendants. *Issen v. GSC Enterprises, Inc.*, 508 F.Supp. 1278, 1295–96 (N.D. Ill.1981). Since the rationale of that opinion is applicable with equal force here, this Court will grant defendants' motion to dismiss Count IV of Abrams' complaint.

■ Rule 23.1 of the Federal Rules of Civil Procedure requires that a plaintiff in a derivative suit must be a shareholder

both at the time the suit is filed and at all relevant times during the pendency of the litigation. *Portnoy v. Kawecki Berylco Industries, Inc.*, 607 F.2d 765, 767 (7th Cir. 1979); *Issen, supra* at 1295. In the present case, although Abrams was a shareholder prior to the merger at issue, he is constructively viewed as having sold his shares as the result of the merger in order to invoke this Court's jurisdiction under the securities laws. *Issen, supra* at 1295. Having constructively sold his shares, Abrams cannot receive any indirect benefit from corporate recovery in this action and therefore does not enjoy the "adequate interest" necessary to litigate this claim on a derivative basis.[11] *Portnoy, supra* at 676. Abrams cannot be a seller of stock for the purpose of advancing claims under the securities laws and a current shareholder for the purpose of advancing this pre-merger derivative claim.[12] Accordingly, this Court grants defendants' motion to dismiss Count IV of Abrams' complaint.

### *Motions In Issen*

### 5. Motion to Dismiss for Want of Prosecution

■ The procedural posture of this litigation has been complicated by a parallel lawsuit commenced by Phillip Issen in 1974 against various defendants, many of whom are also defendants in *Abrams*. Although *Issen* advances securities claims similar to those in *Abrams, Issen* also involves a number of class and derivative claims not at issue in *Abrams*. Defendants allege that Issen's apparent failure to participate in the

---

**11.** Abrams argues that the policy in favor of a plaintiff/shareholder with an active interest in the litigation is somehow inapplicable when the plaintiff has not voluntarily disposed of his shares. The involuntary nature of plaintiffs' "sale" does not, however, alter the fact that plaintiff will not benefit, even indirectly, from a favorable result on this count. Moreover, as the remainder of Abrams' complaint demonstrates, the Court notes as an equitable matter that plaintiffs are not left without an avenue for relief for the allegedly wrongful conduct of defendants.

**12.** Abrams also cites without explanation § 261 of the General Corporation Law of Dela-

ware, the state of GSC's incorporation, to the effect that any action pending on behalf of a corporation which is a party to a merger must be prosecuted as if the merger had not taken place. Delaware law, even if relevant to the circumstances of this case, would not govern the result here since this is not a diversity case. *Kreindler v. Mary*, 85 F.R.D. 612, 615 n.2 (N.D. Ill.1979). Moreover, it is relatively clear even as a matter of Delaware law that plaintiffs could not maintain this action on a derivative basis. *See Heit v. Tenneco*, 319 F.Supp. 884 (D.Del.1970); *Braasch v. Goldschmidt*, 41 Del.Ch. 519, 199 A.2d 760 (1964).

pretrial process generally and the discovery process specifically for over five years merits the dismissal of this lawsuit. After reviewing the circumstances of Issen's participation in this litigation since its inception, the Court will deny defendants' motion.

As indicated earlier, the *Abrams* and *Issen* cases have been consolidated for pretrial purposes. In light of this posture, Abrams and his counsel, with the stated agreement of Issen and his counsel, have taken the lead throughout the course of this litigation in conducting discovery, responding to defendants' various motions and moving for class certification. *Issen*, 522 F.Supp. at 400. Thus, Issen argues it has actively participated in the preparation of this case through Abrams and his counsel. This division of labor, however imbalanced, is not grounds for dismissal.

It is true that most, if not all, of plaintiffs' discovery to date in these consolidated actions has involved factual questions primarily relevant to *Abrams.* Nonetheless, Issen represents that it will be prepared for trial at the scheduled date.[13] This Court is not currently in a position to question Issen's judgment on the sufficiency of his pretrial discovery. Similarly, this Court is not in a position to judge the strategic wisdom of Issen's decision to permit pretrial preparation and argument to focus on the adequacy and sufficiency of Abrams' complaint. As long as *Issen* and *Abrams* are consolidated, Issen is not obligated to invite these disputes.

This Court cannot discern any substantial prejudice defendants will suffer if Issen is permitted to pursue his claims. Issen has not actively prevented any of the defendants from conducting full and complete discovery concerning the allegations in his complaint. Issen has responded to status inquiries from this Court and to all arguments directed specifically at his complaint. That pretrial preparation has focused on Abrams' claim is as much the result of defendants' strategy as Issen's. Under these circumstances, the Court will not dismiss Issen's complaint for want of prosecution.

### 6. Plaintiff's Motion to Amend Complaint

Contrary to defendants' characterizations, Issen has not been entirely passive in the prosecution of this suit. On April 20, 1981, Issen moved this Court for leave to add Miller, Cooper as a defendant and to add an additional count to his complaint.[14] The primary issue to be resolved in consideration of plaintiff's motion is whether this amendment, alleging a cause of action dating back as far as 1968, is barred by the applicable three-year statute of limitations. Under the relation back standards established by Rule 15(c), we conclude that Issen's amendment is time barred.

As a practical matter, Issen's proposed amendment does not state a new or independent claim for relief against any of the defendants already named in his complaint. Although the amendment is somewhat more detailed than Count I of Issen's first amended complaint, the amendment does not advance an independent ground for relief in this case.[15] The amendment has substantive significance only insofar as it names Miller, Cooper as a defendant in Issen's class action on behalf of GSC common stock purchasers. Miller, Cooper, however, cannot be brought into Issen's lawsuit eight years after it was originally filed.

---

**13.** In light of Issen's pretrial strategy to date, the Court wishes to make clear that, absent truly extraordinary circumstances, Issen will be held to his representation that he will be prepared for trial when called.

**14.** Although Issen moved to amend his complaint, the initial brief in support of this motion was submitted by Abrams' counsel. Issen did, however, file a reply to defendants' briefs in opposition to his motion.

**15.** Abrams' supporting memorandum asserts simply that "the motion to add the additional count is to clarify existing claims." Abrams Memorandum, p. 2. Such "clarifications," to the extent they apply to existing defendants, should not be made the subject of a separate count.

The Federal Rules provide that leave to amend the pleadings "shall be freely given when justice so requires." Fed.R. Civ.P. 15(a). The Rules also provide, however, that an amendment adding a defendant after the running of the statute of limitations will relate back to the date of filing the complaint only if (1) the new defendant has received notice of the actions such that he will not be prejudiced in maintaining his defense, and (2) the new defendant knew or should have known that, but for a mistake, the action would have been brought against him. Fed.R.Civ.P. 15(c). In the present case, the fact that Miller, Cooper is a named defendant in *Abrams* does not satisfy the notice requirements of the Federal Rules.[16] Indeed, as Issen represented in his response to this Court's status inquiry, Issen's proposed class claims are not the same as the class claims brought by Abrams. Permitting Issen to assert these claims against Miller, Cooper now would require that Miller, Cooper prepare a new defense to a separate cause of action arising from conduct which occurred up to fourteen years ago.

Plaintiffs' argument that the running of the statute of limitations on these claims was tolled pending class certification is disingenuous. Plaintiffs did not even move for class certification in these cases until August of 1977, over three and one-half years after the filing of Issen's original complaint. Moreover, the principle of tolling pending class certification permits plaintiffs who are denied class status to bring suit on their own behalf against the same defendants notwithstanding the statute of limitations. Tolling of the statute of limitations cannot be used to bring a new defendant into a new cause of action.[17] Accordingly, Issen's motion for leave to amend his complaint by adding an additional count and adding Miller, Cooper as a defendant is denied.

### Conclusion

For the foregoing reasons, Miller, Cooper's motion for reconsideration in *Abrams*, various defendants' motion for partial summary judgment in *Abrams,* various defendants' motion to dismiss *Issen* for want of prosecution, and Issen's motion to amend his complaint are denied and Abrams' motion to present class action notice and various defendants' motion to dismiss Abrams' derivative claim are granted. It is so ordered.

---

16. Although this Court has earlier expressed its willingness to read Abrams' complaint broadly, that complaint cannot by any construction be read to give Miller, Cooper notice of Issen's distinct cause of action involving a different period of time. To the extent Issen's class claims overlap with Abrams', they will be subsumed within Abrams' cause of action (assuming Issen conforms to his representation that he is willing to join Abrams' class). To the extent Issen's claims are independent of Abrams', Issen cannot now claim that Miller, Cooper received notice of those claims by virtue of *Abrams.*

17. Indeed, as the Second Circuit noted in *Escott v. Barchris Construction Corp.*, 340 F.2d 731, 734 (2d Cir., *cert. denied*, 382 U.S. 816, 86 S.Ct. 37, 15 L.Ed.2d 63 (1965), cited by plaintiffs, the principle of tolling applies when the filing of the class action makes defendants "aware of the nature of the evidence that would be needed at trial." In the present case, however, neither Issen's initial complaint nor Abrams' complaint gave Miller, Cooper notice of the full scope of claims Issen would eventually attempt to assert against them.